IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

CAROLYN EMERLINE                                                                    PLAINTIFF

V.                          No. 3:22-CV-116-JTR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                                      DEFENDANT

## ORDER

### I. Introduction

Plaintiff Carolyn Emerline applied for disability benefits in May 2017. (Tr. at 331-41). After her application was denied both initially and upon reconsideration, Emerline attended a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 41-73). The ALJ denied her application on April 1, 2019. (Tr. at 179). Emerline asked the Appeals Council to review the ALJ's decision. The Appeals Council granted her request. Upon review, the Appeals Council vacated the ALJ's decision and remanded the case for re-evaluation. (Tr. at 184-87). Another ALJ hearing was held, and on May 25, 2021, the ALJ issued a second unfavorable decision. (Tr. at 14-32). This time, the Appeals Council denied Emerline's request for review. (Tr. at 1). Therefore, the ALJ's denial of Emerline's application for benefits stands as the final decision of the Commissioner.

Emerline filed this case seeking judicial review of the decision denying her benefits. For the reasons stated below, the Court[1] affirms the ALJ's decision.

## II. The Commissioner's Decision[2]

The ALJ found that Emerline had not engaged in substantial gainful activity since her amended alleged onset date of March 13, 2019. (Tr. at 17). At Step Two of the five-step evaluation, the ALJ found that Emerline has the following severe impairments: carpal tunnel syndrome, degenerative disc disease, depression, anxiety, and post-traumatic stress disorder (PTSD). (Tr. at 18).

After finding that Emerline's impairments do not meet or equal a listed impairment, the ALJ determined that Emerline has the residual functional capacity ("RFC") to perform work at the medium exertional level, with the following additional limitations: (1) frequent fingering and handling with the upper extremity; (2) occasional stooping, crouching, bending, kneeling, crawling, and balancing; (3) simple, routine, and repetitive work with supervision that is simple, direct, and

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge. *Doc. 5*.

[2] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

concrete; and (4) frequent interaction with co-workers and supervisors, but only occasional interaction with the public. (Tr. at 21).

Relying upon Vocational Expert ("VE") testimony, the ALJ determined that Emerline is capable of performing her past relevant work as a hand packager because this work does not require the performance of work-related activities precluded by Emerline's RFC. (Tr. at 30). The ALJ alternatively found that Emerline's age, education, work experience, and RFC would allow her to perform other occupations that exist in significant numbers in the national economy, such as a domestic dayworker, laundry worker, or hospital dietary aide. (Tr. at 30-32). The ALJ therefore concluded that Emerline was not disabled. (Tr. at 32).

### III.  Discussion

#### A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however,

"merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court has held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

### B. Emerline's Arguments on Appeal

Emerline contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the ALJ erred in assessing an RFC for a limited range of medium work. After reviewing the record as a whole, the Court concludes that the ALJ's decision should be affirmed.

The RFC is an administrative assessment that represents the most a claimant can still do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The

4

claimant bears the burden of persuasion to demonstrate RFC. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). But it is the ALJ who ultimately determines the RFC, based on an evaluation of all the relevant evidence, including medical records, observations of treating physicians and others, and a claimant's own description of her limitations. *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quotation omitted).

Emerline's argument primarily concerns the ALJ's rejection of prior administrative medical findings from two state agency consultants. Both physicians reviewed the available medical records and opined that Emerline would be limited to light work with additional environmental limitations. The ALJ was not required to "defer or give any specific evidentiary weight" to these opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). And Emerline concedes that the ALJ addressed the persuasiveness of the opinions and discussed their supportability and consistency with the record—which is all that the ALJ was required to articulate in his decision. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). But Emerline insists that the ALJ relied on "irrelevant and cherry-picked evidence" in order to discredit the opinions and assess an RFC for medium exertional work.

The Court is not persuaded. The ALJ found that the physicians' opinions were "supported with citations to the record, including EMG findings showing mild to moderate carpal tunnel syndrome on the right and an MRI of the cervical spine showing spondylosis greatest at C5-6 with mild canal stenosis and severe right foraminal stenosis." (Tr. at 28). However, he found that the opinions were nevertheless "largely inconsistent with the generally benign physical examinations of record." *Id*. The ALJ specifically cited clinical exam findings reflecting motor and sensory function that was grossly intact without deficits or weakness, normal motor and sensory function, normal gait, the ability to move all extremities well, and full range of motion in the right arm, hand, and wrist without redness or swelling. Each of these findings is supported by the record. (Tr. at 511, 513, 516, 519-21, 745, 747, 752-55).

The Court acknowledges that the record also contains some clinical findings which are consistent with the physicians' opinions. (Tr. at 560-62, 766-68). With regard to her carpal tunnel syndrome, Emerline presented to her family doctor in December 2016 and April 2017 with complaints of numbness and occasional burning sensation discomfort in her right hand. But, following an EMG/NCV in May 2017 that revealed mild to moderate carpal tunnel and mild chronic radiculopathy at C6 on the right, "the record is devoid of any further treatment for her carpal tunnel syndrome." (Tr. at 23). As for her degenerative disc disease, Emerline had an MRI

6

of the cervical spine in May 2017, and a repeat study in June 2018, which showed spondylosis. When she presented for return appointment in August 2018 following her recent MRI, she was noted to have last been seen in the office in May 2017. On exam, she had some decreased range of motion in her cervical spine and muscle spasms in the trapezius bilaterally, but she denied any tenderness and motor and sensory were intact. She was diagnosed with cervical radiculopathy and instructed to continue activity and medications as directed by her primary care physician. Again, "[t]he record is devoid of any further treatment" for her condition. (Tr. at 24).

The ALJ considered the evidence and concluded that the "generally benign" clinical findings cited above were more consistent with the "longitudinal record," which, in turn, was most consistent with medium work. (Tr. at 28). The normal exam results cited by the ALJ support his analysis. *See Grindley v. Kijakazi*, 9 F.4th 622, 629 (8th Cir. 2021) (finding that, where "normal" exam results were the most consistent results in claimant's treatment records, the ALJ "made a permissible decision to give more weight" to those results). Emerline's infrequent treatment history and extensive daily activities both corroborate these objective medical findings and provide further support for the ALJ's conclusion.

Emerline's treatment history supports the ALJ's conclusion that the medical opinions were inconsistent with the "longitudinal record." As the ALJ explained elsewhere in his decision:

> The record is devoid of any surgeries, hospitalizations, emergency department visits, pain management visits, orthopedic specialist visits, injections, physical therapy or acupuncture treatment related to her degenerative disc disease and carpal tunnel syndrome. The evidence demonstrates that the claimant does not regularly treat for these conditions, as she has not seen a medical provider since October 2018. The claimant testified that she did not keep the appointment with the spine specialist that was set on the date of the last hearing in December 2018. . . . Since March 13, 2019 [the amended alleged onset date], the record is devoid of any treatment related to her physical conditions. At the hearing held on March 25, 2021, the claimant reported she had been to her family doctor . . . 3 or 4 times[] since the last hearing, but only received medications for blood pressure and cholesterol. The record does not reflect a condition[] which would bar claimant from performing work within the above parameters.

(Tr. at 26). The Court notes that the reviewing physicians issued their medical findings in October 2017 and February 2018, respectively. (Tr. at 128-29, 147). Their findings not only predate Emerline's alleged disability onset date by more than a year, but they also fail to account for her lack of medical treatment during the relevant time period. *See* 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5) ("other factors" relevant to evaluation include medical source's familiarity with other evidence in the claim); *Milam v. Colvin*, 794 F.3d 978, 984-85 (8th Cir. 2015) (claimant's years-long failure to seek medical treatment supported ALJ's decision to deny benefits). As the Commissioner correctly explains, the record throughout the relevant time period "showed no objective findings, diagnostic results, electrophysiological studies, medical imaging, or any other observations and no

8

treatment or recommendations for treatment" that would be consistent with an exertional limitation to light work. *Doc. 20 at 13*.

Additionally, in his evaluation, ALJ cited pointed to specific instances in Emerline's treatment records wherein she described performing activities such as: doing odd jobs in exchange for room and board in a guest house, moving items into storage, metal detecting, shopping at flea markets and pawn shops, visiting friends' houses, going out to movies and restaurants, "marble hunting," walking at Craighead Forest, going to the library and grocery shopping, taking out dogs, and picking up cans. (Tr. at 28, 842, 848, 850, 852, 859, 868, 875, 877, 881). He also referenced Emerline's adult function report, wherein Emerline reported taking care of her daughter, preparing meals, driving, shopping, going outside daily, going out to movies and restaurants on a regular basis, and doing "all" of the household chores, including cleaning, laundry, repairs, ironing, and yard work. (Tr. at 18, 421-28).

Finally, the ALJ was not required to explain why he chose not to adopt the environmental limitations from the reviewing physicians' medical opinions. When a medical source provides multiple medical findings, the ALJ need only explain how he considered that source's findings together in a single analysis. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). The ALJ is under no duty to articulate how he considered each medical finding individually. *Id*. Nor is the ALJ bound by the

reviewing physicians' findings. *Hilkemeyer v. Barnhart*, 380 F.3d 441, 447 n.4 (8th Cir. 2004).

The ALJ properly considered all of the relevant medical and non-medical evidence in the record in evaluating Emerline's physical impairments, and his RFC assessment reflects manipulative and postural limitations to account for them. The ALJ adequately explained the reasons for his decision, which the Court finds was "within the available zone of choice provided by the whole record." *Austin v. Kijakazi*, 52 F.4th 723, 731 (8th Cir. 2022) (internal quotation omitted). The Court must therefore affirm the decision.

## IV. Conclusion

For the reasons stated above, the Court concludes that the ALJ applied proper legal standards and substantial evidence on the record as a whole supports the ALJ's decision. The finding that Emerline was not disabled within the meaning of the Social Security Act is hereby AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 31st day of May 2023.

_____
UNITED STATES MAGISTRATE JUDGE